The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, good afternoon. Let me see who we have here. Mr. Cox, can you hear us? Yes, yes I can, Your Honor. But you can't, can you see us? I can see you. For some reason, my video is, will not start. All right, we understand that. Okay, Mr. Sun, can you hear us? Yes, Judge Niemeyer, good afternoon. All right, we'll begin with the first case of Lightfoot v. Georgia-Pacific Wood Products, and Mr. Cox, we'll hear from you first. Thank you, Your Honor. May it please the Court. My name is Sean Cox, and I represent the appellant Christopher Lightfoot here. Mr. Lightfoot developed sinonasal cancer caused by the exposure to wood dust from Appalee's products. Appalee was, sorry, Christopher Lightfoot was exposed to wood dust from Appalee's products from the ages of 6 to 18 in approximately 1981 until the fall of 1992. Now, Christopher Lightfoot filed suit based on these exposures and the failure of Appalee's to warn about the cancer risk associated with their products. The District Court granted summary judgment against Mr. Lightfoot on a claim that there was no evidence showing a duty owed to actually warn about the dangers associated with their products and that there was no evidence of causation. Now, regarding the duty to warn, in North Carolina, a manufacturer has a duty to warn about dangers associated with its products if it knew or should have known of those dangers. And courts look to state-of-the-art evidence in order to determine whether a manufacturer knew or should have known about the dangers associated with its products. And this court has defined state-of-the-art evidence as all of the available knowledge on a subject at a given time. And this includes the scientific, medical, engineering, and any other knowledge that may be available. That's how this court has defined state-of-the-art evidence. But the District Court did not follow that definition. The District Court limited its examination of the state-of-the-art evidence solely to whether OSHA had declared and designated wood dust as a carcinogen and the organizations upon which OSHA relies on, primarily the International Association for the Research of Cancer, which is known as IARC. Now, without a designation from IARC or OSHA that wood dust was cancer-causing, was a carcinogen, the District Court found there could not be a duty to warn. Now, this ignores this court's definition of state-of-the-art and narrows the state-of-the-art examination to solely a designation by a government agency that a substance is toxic. And this, by extension, limits the duty to warn for any manufacturer about the dangers associated with their own products unless a government agency has told them that they must by designating it as a cancer-causing agent. Now, the District Court limited its consideration to the 1995 IARC monographs, which examined wood dust. Counsel, this is Judge Richardson. If I can interject for just a second, I want to make sure, maybe take a step back and make sure I understand the framework that you're asking us to apply. In order to have a duty to warn, in this case, you agree that the state-of-the-art evidence had to show that wood dust was a known carcinogen, right? Well, I would phrase it the way the Eastern District of Virginia recently did, which is, if experts in the field would have known about the hazard, then the manufacturer had a duty to warn about it because manufacturers are held to the standard. But when you use the word hazard there, and I just want to make sure I'm understanding what your distinction is, by hazard, you mean carcinogen, not that it causes bronchitis, for example, right, because it gets in your lungs. The hazard we're talking about is that it causes cancer. Yes, Your Honor. The important part of a carcinogen is that it causes cancer. It has a causal relationship between the wood dust and cancer. Yes, Your Honor. This is still framework. I'm not talking about the evidence, but the evidence that you're giving us needs to show that, right, a causal link between the wood dust and causing cancer. I guess what I'm getting at is it's not sufficient if there's merely a correlation. It has to be causation. Yes, Your Honor. I suppose I'm looking at it as a causal relationship. Okay. And so, and you, I mean, just as a matter of basic sort of, you know, linguistics and statistics, correlation is not itself causation. There's a whole sort of series of spurious correlation that exists. The question is whether there's a causal link. And I want you to talk about the evidence, but I want to understand that that's what we're looking for in some of the evidence here, that there is a, something that's not just correlation, but shows a causal link between the two. Okay, Your Honor. It's, there's actually a lot of evidence that shows that causal link, not just correlation, but a causal link between cancer and wood dust. And it wasn't just discovered in 1995 when IARC published a monograph designating wood dust as a carcinogen. It dates back, even with IARC, it dates back to 1981 when they were examining the furniture making industry and in their examination. Take that example, and then I'll let you go, but take just the 1981 example where they describe an association between workers in the furniture industry and cancer, right? That describes, I think quite well, a correlation. What it does not do is establish causation, right? Well, it indicates that whatever it was, 11 out of 72 of the people that studied with that cancer worked in the furniture industry. And that's a correlation, and it may be an interesting correlation, but it itself doesn't establish causation. Well, Your Honor, it was not just that certain number of people that worked in the furniture making industry developed cancer. It was also that those individuals, the risk of developing cancer, where it was elevated, wasn't those exposed to wood dust. That again is a, what I'm trying to get you to explain to me is why that's something other than correlation. It correlates. So in other words, those exposed to wood dust have or show up with greater cancer, and that's a correlation, right? And there are all sorts of correlations that exist. The question is, why is that not causation? Why is that causation? For one thing is that you can't just look at the IARC analysis there. You look at also all the foundational research that dated back to 1965. Okay, I understand that. Before you move on, Mr. Cox. Mr. Cox, before you move off of the 1981, I just want to make sure that we're clear. That itself does not show causation. You want to point to something else. But so do you agree with me that the 1981 IARC shows correlation only and not causation? Let me interject and say it would be helpful in hearing your answer to Judge Richardson's question. If you would tell us what you think the difference is between correlation and a causal link. Because if we're not on agreement on that, then the answer here may not mean very much. What is the difference that you view between a correlation and a causal link? If the understanding of correlation is not enough, you must show a causal link. I think the difference is when you are not looking at one simple example of it, but you have a number of studies that show this same thing on a repeated basis. And also, I think you look to the opinion of experts. When you say shows this, you're skipping over the question that's asked. What does it show? You say there's numerous things showing what? It's showing, and this is in the words of an expert. No, showing. I want you to tell me what it showed. It shows it. I think the question that, as I understand Judge Wynn, was let's find out what these studies are showing. Is it a correlation or is it a causation? And is there a difference, and how do you define the difference between the two? Well, I think that where you would look to that is, for one thing, is look to where the experts define it. Not where, but we're trying to find the meaning of some words, the terms you're using, if you would define them for us. Well, Your Honor, a correlation is more along the lines of a coincidence. It is that simply because one item follows another does not prove causation. But when you have an abundance of evidence showing the same connection, and you control for other factors, such as you eliminate that it is caused by perhaps formaldehyde or some other causative factor that might be involved in furniture making, then you get to reach the causation so that you're not just looking at whether one thing happened and then another. You're looking at whether this one thing happened, exposure to wood dust, and then cancer happened, and you're able to eliminate other positive possibilities, other items which might explain the correlation. And here, IARC eliminated those and found that the connection was between… Mr. Cox, can I interrupt you one second? Yes, yes, please, Your Honor. We're having a technical problem. I think we've lost one attorney. …trying to find the difference between correlation and causation, and you were summarizing the notion that numerous correlations could lead to something more. I think that's about where you were. Well, it's perhaps a little more nuanced than that. It's essentially that if you… …that it's not just that two things happen together at the same time, but that you can actually manipulate the change and you can show causation that way. Now, if you take the number of studies that were examined in IARC and by OSHA and NIOSH and over the years during the exposure period, you see there is actually a causal relationship that when you increase exposure to wood dust, you increase the risk of cancer. Now, what's most important, I think, in looking at this distinction of what is considered causative as opposed to a correlation is you look to the experts. We had an expert epidemiologist who actually worked with IARC in crafting these monographs, Dr. Aronson. And she interpreted the 1981 language addressing wood dust to be already in 1981 a causative statement. And what's more interesting than that is… Let me ask you something on that. If you have an expert that's looking at the data and ignores the words but draws her own conclusion that this statement means more than what it says, that's hard to impute to manufacturers who are reviewing the data and are reading just the words. And the words in 1981 talk about a correlation and they talk about it in a particular workplace and with particular types of woods, furniture woods. And the question is whether that is something on which a wood seller would have to draw the conclusion that there was a cause between sawdust and the cancer. Well, Your Honor, I think the important thing is to not just look at the 1981 IARC or just look at the 1995 IARC monograph, but we can also look directly at OSHA. OSHA actually stated in 1989 that exposure to wood dust has long been associated with a variety of adverse health effects, including cancer. Now, additionally, NIOSH in 1987… Sir, do you read the word associated to be any different from correlation? I do, Your Honor. Explain. And I believe that… Tell us why that is. Because association isn't necessarily… that doesn't mean… that's not the same as correlation. There can be relationships that are associations that could be causation or it could be correlation. Now, in the interpretation of OSHA, they're not mentioning this in here that there is an association with cancer simply based on correlation. Otherwise, they would perhaps have said there is a correlation here. They said there is an association. And NIOSH, which in 1987 stated that, citing to a Canadian governmental report, that exposure to wood dust is convincingly associated with the development of cancer of the nasal cavity and paranasal sinuses. That's not just there's a correlation, that there's a relationship that one… they happen to appear at the same time. We're talking about a convincing association. That is causation. That would, to experts in the field, indicate that there is a causal relationship between wood dust and cancer. And if experts in the field would interpret the… or would understand that there is a hazard associated with their products, with these Apolyse products, then the Apolyse had a duty to warn. Now, the problem here is what stems from the district court's alteration of the state-of-the-art review and requiring actually – and she stated this on page 16, 17, and 18 of her order – that she needed a state-of-the-art determination by a government entity before she would find a duty to warn. I see my time has expired, Your Honor. All right, you do have some rebuttal. All right, Mr. Sun? May it please the Court, I'm Paul Sun for Georgia-Pacific and Fairhouse. The district court correctly ruled that Georgia-Pacific and Fairhouse did not have a duty to warn that wood dust causes nasal cancer. And on that basis, the district court properly granted summary judgment. The only claim that Mr. Lightfoot pursues is a duty to warn claim. Under North Carolina law, that is a question of law for the court. There was no duty to warn here because the state-of-the-art, and as this court has said in Horn, that's the culmination of the relevant research, did not establish during the exposure period that wood dust causes nasal cancer. Similarly, the state-of-the-art established only that there was an association of increased incidence of cancer with occupations involved with woodworking. So it was not reasonably foreseeable, based on the state-of-the-art, that a retail consumer who would be working in a hobby fashion in his own home woodshop, using mostly softwood, would be at an increased risk of nasal cancer. I don't want to interrupt you, but your colleague just said that we should read the word association to mean causation. Can you respond to that argument? I can, Your Honor, and I can respond in two ways. First of all, Mr. Lightfoot's own expert, that's Dr. Jones, says association and causation are different concepts. That's at Joint Appendix, page 1535. And also for reference for the court's consideration, the Federal Judicial Center's Reference Manual on Scientific Evidence, and I would cite the third edition, 2011, on page 221, says, specifically, association is not causation. Association is not causation. The court inquired, when would there be an ability to look and go beyond association to causation? And I can cite, again, to the court, IARC, the International Agency for Research on Cancer, the definitive body, not a governmental body, but the definitive scientific body to determine when exposure to some substance causes cancer. What IARC says, and this is at Joint Appendix, page 982, that you look for in association, you look for strong associations, you look for associations in different circumstances of exposure, and you look for when the risk of disease increases with the amount of exposure. And on that last detail, Mr. Lightfoot argued that there was evidence in those studies or in the IARC reports or in NIOSH that the risk of disease, the risk of getting cancer increased with the amount of exposure. Your Honors, the state of the art did not show that. There were no studies showing how increases in exposure would or would not lead to increases of cancer. Again, Mr. Lightfoot referenced the NIOSH survey, and I can ask the court to look at Joint Appendix, page 2189. There were no reports of studies, no reports or studies, showing that with the increases of exposure level, that there would be increases of cancer. Is an association more than a correlation? No. I don't agree with that either, Your Honor. Those words are the same. They have the same meaning. And again, to highlight where counsel has or Mr. Lightfoot has focused both in the brief and in the argument today, looking at the 1981 IARC report or the 1987 NIOSH report, and those are quoted at length in Mr. Lightfoot's brief. In neither of those, is there any statement about wood dust causing cancer, that wood dust is a carcinogen, that wood dust is carcinogenic, or any of those? There are no statements to that effect. The only statements of any import in either of those reports, 1981 IARC or NIOSH, have to do with associations with certain occupations. So let me ask just out of, I guess, curiosity, the studies that would at least give some rise that perhaps would support a causation if there was such a thing. Are those typically industry-driven studies or are they studies, governmental studies or academic studies? I mean, how does that happen? And let me tell you where I'm going, because I wanted to kind of explain to it. If there is some indicia, maybe just a correlation or association that this happens, it would seem that that would in turn inform the need to do some studies. So at that point in time, if we're talking back in 1981, if at least we have a correlation and we fast forward up to the year 2000, you would think that given that correlation or association that's being indicative back then, somebody would do a study or someone would begin to undertake this. And my question, and of course, you know, I don't think it's determinative, but at least it seems to indicate something. Is that industry-driven for the most part or is it government or where does that lie? I know OSHA was involved, but where does it lie? Your Honor, there were many, many, many academic research studies conducted before 1981, between 1981 and the end of the exposure period in 1992. Those are cited and relied on, evaluated by IARC. That's what IARC does. It looks at all of the relevant studies and those were for the most part academic studies. Your Honor, there was also a government NIOSH study in 1987, but there was a lot of focus. Your Honor is exactly right. And what IARC does is it looks at whether there is evidence to suggest that an exposure may cause cancer and it investigates that. That's what it did throughout that period and not until after the exposure period, 1995, did IARC reach the conclusion. It says its evaluation at that point was that wood dust causes cancer. So do we take it that if an incident occurs where someone does in fact contract this level of cancer and then subsequently there are studies that show a causal link, because it didn't exist then, for the most part there would be no liability that would arise in that instance? That's exactly right, Your Honor, and that's what the Horn case says. And so are we to take it that as of today there is no study, nothing to show a connection, a causal connection, a link with wood dust and this form of cancer? No, Your Honor. In 1995, which is after the exposure period, IARC evaluates wood dust and did conclude that wood dust causes cancer. So there was a conclusion reached, and again, in the language of the Horn case, the culmination of the relevant research, and to Your Honor's point about looking backwards, again, that's what Horn says is not appropriate with state-of-the-art evidence. State-of-the-art evidence should not be used retroactively to discredit conduct before the culmination of the relevant research. And here the relevant question is, does wood dust cause cancer? And there were no conclusions reached, there was no culmination of the research during the exposure period in that regard. The studies were ongoing, the studies were frequent, and the studies went all the way up until 1995. In that IARC report, which again is from 1995, it cites numerous studies that were published after the exposure period. And I could cite pages at 1161, 64, 65, 70, 71, 72, etc. That's from the bibliography, but to Your Honor's question, those studies are ongoing, and it was the definitive cancer rating agency, IARC, and that's not Paul Sun or Georgia Pacific or Weyerhaeuser calling IARC the definitive cancer rating agency. Let me ask you this. Could you also prevail on foreseeability that there's no jury question on that? And if we did that, would we need to answer the state-of-the-art question? Your Honor, it's really another way of looking at the same thing. So yes, because what, again, this court has said needs to be the focus is when the state-of-the-art, when the knowledge was available on the subject at a given time, what was known and when the knowledge was available, and to the question again about what's being studied all along here during the exposure period, it is in the occupational settings. There were no studies in non-occupational settings. So the foreseeability of someone not in an occupational setting, but rather in a home, woodworking environment, there were no studies in the non-occupational settings. The studies that were going on in occupational settings were mixed. They were pointed in the direction often of saying that there was a higher incidence of cancer with certain occupations, but not exclusively, and not with every kind of occupation that was being studied where wood dust was involved. As of 1981, for example, IARC found that association only with the furniture-making industry, not with various other industries having to do with, again, wood dust exposures, cabinetry, joinery, sawmilling, and the like. There were no conclusions reached, no state-of-the-art evidence supporting anything with that regard. Again, I'll highlight, and I said this, but not to repeat it too much. There were no studies at that time, and all the way through the exposure period, showing how increases of exposure would or would not lead, exposure to wood dust, would or would not lead to increases in the incidence of cancer. So translating or applying, and Mr. Lightfoot argues, well, you could just translate those non-occupational findings and research into a non-occupational setting. You can't. There are differences. There are no such studies. There are no findings by any cancer rating agency. There's no exposure, increased incidence reports. Can I ask you a question on that? It's sort of more of a framework question. Do you agree that it is not necessary to have a government agency make the finding? So in a different case, obviously not this case, if there was an academic study that had been conducted in 1988 that definitively concluded that wood dust was a carcinogen, that would be sufficient, wouldn't it? It wouldn't matter that OSHA didn't do it until 1995 if, you know, the lab at Clemson University found that wood dust was a carcinogen. That would be sufficient. The point of OSHA and IARC here is that that's the best evidence of that information, not that it was itself necessary to make that finding. Is that fair? Your Honor, I agree that there doesn't need to be a government finding at all. But I would say to the extent there might be one study that shows a causal connection, that would, I would contend, not be sufficient. If there are other studies that aren't definitive in that regard, that aren't finding that kind of thing, you don't, to impose a duty to warn, pluck a single study out and say, well, that's enough. There has to be, again, to use the words of the Horn case, the culmination of the relevant research. If there are multiple studies, and yes, Your Honor, it certainly does not have to be a finding by a government agency. IARC is, I mean, their task, what they do is determine when exposures to subjects, to agents, cause cancer. Could you find a duty to warn where IARC hadn't done that? Maybe. But that's not the case here because there weren't any studies showing a causation link between wood dust and cancer during the exposure period. And to the question about foreseeability, it ties back again to state of the art, and I mentioned the Lorman case. And I think that, again, sheds the light on how appropriately the district court applied the analysis and why the conclusion was correct that it was not reasonably foreseeable. And what Lorman said there is the state of the art, when the state of the art included knowledge that people such as the plaintiff were at risk. And so the question is, when the state of the art showed that people such as Mr. Thomas Lightfoot, the father, and his son, Christopher Lightfoot, were at risk, and the state of the art did not show that. The district court, again, did not artificially, this is a phrase out of Mr. Lightfoot's brief, create an OSHA litmus test or create something that was, that's page 13, create something that was unsupported by law. All of what the district court did in this case is guided by this court's directions in how to focus on state of the art evidence and what state of the art evidence means. It focused just as this court in Lorman first and then Horn said it should, dealing both with whether there was a duty based on the state of the art evidence. I will note that in Mr. Lightfoot's briefs, he does purport to represent to the court that there are studies outside of the occupational context. First of all, that's not correct. At page Joint Appendix 995, IARC says that there are no studies outside of the occupational setting, but what Mr. Lightfoot cites to is a research, it's a case series study. The author is someone named Lingeman. It's cited actually a couple times in the Joint Appendix 2171 and 2540. In describing the 72 people who were studied and were found to have nasal neoplasms that were malignant, one, it was reported, one had a home woodworking environment. That's not the kind of study. First of all, there's no study of non-occupational settings. It is an anecdotal finding of one out of 72, and that's the only instance that Mr. Lightfoot is able to cite at all for whether there was any focus on non-occupational settings. So as you're concluding here, I just have a curiosity question. It doesn't matter that this would be a minor who, if his father is picking up lumber from a place they know his father, would it matter if you could show that they knew it would be used around children? And if there were studies showing they had a higher propensity for this, would that be of any consequence here? When I say propensity, I don't want to get mixed up with causation and correlation. You see what I'm just asking? Does the matter of him being a minor have any import in this kind of legal discussion at all? Your Honor, I think it could, and again, that's what Lorman says. You look at the kind of plaintiff involved. In that case, it was someone working in an asbestos plant. And the question was, are they exposed to raw asbestos or products with asbestos? Here, the particular distinction is Mr. Lightfoot is working in a home woodworking environment. But yes, Your Honor, I think if there were studies, it would go to foreseeability. Would it be foreseeable for a reasonable wood lumber manufacturing company like Georgia Pacific or Weyerhaeuser to warn that would be informed by the state-of-the-art evidence, if it showed that there was some causal relationship between exposure to wood dust and an incidence that increased with younger age claimants? And on that ground and on the other grounds, advanced by the district court and in Georgia Pacific and Weyerhaeuser's brief, we would ask the court to affirm the district court. Thank you. Let me just ask you one question. This is just a curiosity. How are consumers today warned about this risk? If I go to Home Depot, I'll just get it more specific. I have bought lumber at Home Depot over the past years, and I can't recall ever seeing a notice anywhere that warns of this risk. The first time I've learned of this risk is in this case. And I'm just wondering, just as a curiosity, how the consumer today is notified. Your Honor, there isn't anything in the record in that regard, and I'd be reluctant to represent what the situation is without being able to point the court to something in the record in that regard. All right. That's fair enough. Okay. Mr. Cox?  Thank you, Your Honor. I would like to point out that the study that was mentioned earlier regarding the home workshop exposures, that was seen as credible and important enough to be cited by IARC in the 1987 monograph, as well as by NIOSH in its 1987 monograph. But would that be, not to get to the too fine point, but IARC undertakes to try to report and review all of the studies that are done before it draws conclusions. And it seems to me if that is a study that took place, whoever looks at the substance of it would have to draw a conclusion as to whether one person out of 72 who was exposed to workshop dust got cancer. Or the 72 cancer victims, only one worked in a home workshop. It seems to me somebody reading that and collecting evidence as to what the causation element might discount that type of study much more than a more comprehensive study or more persuasive evidence. I think it gets difficult for us as a court to start assessing and weighing the various individual studies if we get an idea of how many there were and who was reviewing them and the industry's knowledge of them requiring them to warn the public. Your Honor, actually, I believe it's the jury that should be examining the state-of-the-art evidence with the benefit of expert testimony to explain it. Because, again, these monographs are not written for laypeople or lawyers or even judges. They are written for experts in the field. And so experts can present to a jury the state-of-the-art evidence, and the jury can weigh it and determine whether the manufacturers knew about the dangerous propensities associated with their products. And that is what the law is. The duty to warn is in relation to the product's dangerous propensities, which are known or which by the exercise of care commensurate with the danger should have been known by the manufacturer. That's the standard. It's not whether the product contained a percentage. Counsel, can you give me a case for the proposition that whether a duty to warn exists is a question of fact for the jury? I don't have it off the top of my head, Your Honor. I'm sorry. Alternatively, can you respond to your colleague's suggestion that there was no study prior to 1992 that connected an increased risk of cancer with the increased amount of exposure to wood dust? Can you point me in the JA where that study that you referenced in your initial argument exists? Well, Your Honor, I point you. I mean there are numerous studies that examine this, and I think IARC in 1981 specifically stated that the increase in cancer risks were among those that were exposed to wood dust as opposed to those that weren't. I just want to be clear. The answer to my question of where the increased risk results from increased exposure, you're pointing to the 1981 IARC report. Do you have anything else you'd like me to look at when I consider that question? I would like you to look at in JA 2540, and that's in the 1987 NIOSH review, and it's citing to the Canadian report that shows that wood dust is convincingly associated with the development of cancer. I think that we're perhaps even getting off the path. I thought the question was, was the risk increased with the increase of the dust? In other words, a more intense dust, does that create a higher risk? I'm not sure that that's the question that is asked by the science here. It's whether the introduction… No, it is the question that I asked. I understand, Your Honor. What I'm saying is that the introduction of wood dust, that that is an increase from no wood dust, which in the furniture-making industry, the context, there were groups that had no wood dust exposure and groups that had wood dust exposure, and that's where they found the association. Now, I'd just like to mention that the law in North Carolina does not require a scientific causation statement by a government agency or even any study. What it requires is that if a manufacturer knows that there is a dangerous propensity associated with their products and that it poses a substantial risk, that's what they must warn about. There's nothing in the law that says there must be a determination that something is percentage. Thank you, Your Honor. Thank you. We can't see counsel. We would normally come down and greet counsel. We can't even greet you in face, but we do thank you for your arguments.
judges: Paul V. Niemeyer, James A. Wynn Jr., Julius N. Richardson